STATE EX REL. MADISON, Respondent, vs. MAXWELL, City Treasurer, Appellant.

*January 13—February 9, 1937.*

*James J. McDonald* of Madison, for the appellant.

For the respondent there were briefs by *Francis Lamb,* city attorney, and *William H. Spohn* of Madison of counsel, and oral argument by *Mr. Lamb.*

NELSON, J. A demurrer to a return or answer "searches the record" and gives rise to the question whether the petition or complaint states a cause of action. *Meyer v. Reif,* 217 Wis. 11, 258 N. W. 391; *Williams v. Journal Co.* 211 Wis. 362, 247 N. W. 435; *John v. Maryland Casualty Co.* 207 Wis. 589, 242 N. W. 201. It will be necessary therefore to summarize the allegations of both the petition and the return.

The petition, in substance, alleges: That the city of Madison is a municipal corporation duly organized and existing under chs. 62 and 66 of the statutes; that the defendant is its duly elected, qualified, and acting treasurer; that it is his duty to sign and honor all orders for the payment of money which

have been duly authorized by its common council and signed by its mayor, clerk, and comptroller; that its common council at a regular meeting, held August 14, 1936, adopted an ordinance which created a board of transportation commissioners (copy of which ordinance is annexed to the petition and made a part thereof), and also duly appropriated for the use of said board the sum of $200; that at a duly called special meeting of its common council, held August 19, 1936, the members of said board were elected, all of whom duly qualified as members thereof; that on August 25, 1936, the said board met and elected a president and secretary thereof; that at said meeting said board adopted a resolution to retain Merrill B. Knox "to advise with said board of transportation commissioners as to the number, types and size of buses to be acquired by the board for a municipal bus transportation system and also to advise as to bus routes and other matters of operation;" that said board adopted a further resolution which provided that the said Knox be paid a retainer fee of $150 in advance, and that the president and secretary of the board requisition said sum from the appropriation theretofore made by the common council to the board; that the said Knox agreed to render such advisory services to the board providing he was paid a retainer of $150 in advance; that on August 26, 1936, the president and secretary of the board duly requisitioned an order in the amount of $150 and payable to the said Knox for the purpose mentioned; that the order requisitioned was duly drawn and signed by the mayor and city clerk and countersigned by the comptroller; that said order was recommended for approval by the claims committee of its common council on the same day; that on August 27, 1936, said order was presented to the defendant for his signature but he returned it to the comptroller without signing it; that the defendant refused to sign it or to honor it for the asserted reason that such disbursement would

not be lawful because the city of Madison is not authorized by law to operate a municipally owned bus system; that after further unsuccessful attempts had been made by other officers of the city to obtain his signature to the order, its common council, at a regular meeting held August 28, 1936, passed a resolution directing the city attorney to bring an action to compel the defendant to sign and honor the said order.

The ordinance adopted August 14, 1936, created a board of five transportation commissioners, to be elected by the common council for terms varying from one to five years, the duty of which was to have charge of the management and operation of the city bus transportation system. Said ordinance provided in part as follows:

"(a) The board of transportation commissioners shall have the general management and supervision of the city transportation system and all matters connected therewith, and shall have the general power and authority to appoint all officers and employees of the said board to prescribe their duties and to fix their salaries and to make rules and regulations for the management of said transportation system as it shall from time to time find necessary for the safe, economic and efficient management and protection of the transportation system, and such rules and regulations shall have the same validity as ordinances when not repugnant to the ordinances of the city or to the constitution and laws of the state. . . ."

The defendant, in his return, admitted all of the allegations set forth in the petition, and alleged, in substance, that Madison Street Railways Company is now operating a privately owned bus system in the city of Madison pursuant to a certificate issued by the public service commission of this state; that the city of Madison has not secured from the public service commission a certificate entitling it to operate a bus system; that upon information and belief, the city of Madison does not intend to secure from the public service commission

a certificate as required by ch. 194 of the statutes, but proposes to engage in the bus business without securing such certificate; that the order for $150 is in furtherance of the city's plan to acquire and operate a municipally owned bus system without first securing from the public service commission a certificate pursuant to the provisions of said ch. 194; and that he is not authorized by law to pay said order because the city of Madison is not authorized by law to acquire and operate a municipal bus system, and because, even assuming that the city is authorized to operate a municipal bus system, the city has not secured, nor does it intend to secure, the certificate required by ch. 194 of the statutes.

The circuit court was of the opinion that the provisions of sec. 62.11 (5), Stats., were sufficiently broad to authorize the city of Madison to establish and operate a municipal bus system, and therefore apparently concluded that the board of transportation commissioners, created for the purpose of operating and managing a municipal bus system, was authorized to pay a retainer to Mr. Knox who was chosen by the board to give it advice as to the number, types, and size of buses to be acquired by the board for a municipal bus transportation system and as to bus routes and other matters of operation.

Whether sec. 62.11 (5), Stats., when construed with other statutes relating to the acquirement and operation of public utilities by municipalities, is sufficiently broad to authorize a city to operate a municipally owned bus system, to engage in that business without acquiring so much of an existing private bus system as may be actually used and useful for the convenience of the public, or without obtaining from the public service commission a certificate of convenience and necessity, we shall not presently decide, because a search of the record reveals that while the common council has established a board of transportation commissioners for the purpose of

managing a municipal bus system, it has not resolved, declared, or ordained by resolution or ordinance that the city of Madison shall acquire, purchase, own, operate, or engage in operating a municipally owned bus transportation system.

Further searching the record it appears that the $150 sought to be paid to Mr. Knox is only a retainer. The record does not show that the common council has by resolution or ordinance attempted to authorize the board of transportation commissioners to pay a retainer to any expert or consultant in advance of the performance by him of any services for the city. But even if it had attempted to confer such authority upon the board, it would be of no avail since the common council itself has no such authority and therefore could not delegate to an administrative board created by it authority which it does not itself possess. The city has no authority to pay in advance for services to be performed in the future or to pay out city funds for services that have not been rendered or performed. Sec. 62.12 (8), Stats., provides:

"(8) *Claims.* (a) All claims and demands against the city shall be itemized, verified by the oath of the claimant or someone in his behalf, and filed with the clerk, who shall deliver the same to the comptroller for examination. The comptroller shall within thirty days thereafter examine such claim or demand and return the same to the clerk with his report thereon in writing, who shall place the same before the council for action at its next meeting.

"(b) Claims for regular wages or salary may be by pay roll, verified by the proper official, and filed and allowed in time for payment on the regular payday."

At the time of the commencement of this action, Mr. Knox had no claim against the city, since the $150 sought to be paid him was only a retainer and could have been withheld at the pleasure of the city. The $150 was not wages or salary which was due him for services rendered or performed and obviously did not constitute a valid claim against the city.

We have carefully searched the statutes to find a law which authorizes a city to pay for services in advance of their performance, or part performance, but have found none. To approve of such action by a common council, or a municipal administrative board created by it, would open the door to grave abuses.

It is not intended to hold that the common council of a city is without authority to employ an expert, or to authorize an administrative board created by it, to do so. Expert advice to councils or boards is at times absolutely necessary and contracts for such expert services may be entered into by cities, but such contracts should express with some definiteness the compensation to be paid to the expert. There is nothing in the record to show that the board entered into any agreement with Mr. Knox as to the compensation to be paid him for the services to be performed by him.

It is our opinion that neither the common council nor the board of transportation commissioners had any authority to pay to Mr. Knox in advance of the performance of the services to be rendered the sum of $150 or any sum, and that therefore the defendant should not have been commanded by the peremptory writ issued to sign and honor the order for $150. Sec. 62.12 (6) (b), Stats., provides in part:

"The council shall not appropriate nor the treasurer pay out . . . 2. Funds for any purpose not authorized by the statutes. . . ."

In fairness to the trial court, it should be stated that the principle of law which, in our view, rules this action was not called to its attention.

If the city desires to have determined the questions, (1) whether the city has authority to establish and operate a municipally owned bus system; (2) whether, under the existing situation, it may operate such a system without acquiring the existing private bus system or so much thereof as may be

actually used and useful for the convenience of the public; and (3) whether it may establish and operate such a municipally owned system without first obtaining a certificate of convenience and necessity from the public service commission, it may obtain such relief by bringing an action under the Declaratory Judgments Act, sec. 269.56, Stats., in which all persons interested may be made parties to the action.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the plaintiff's petition.